216044 Mitchell Albin v. David Suetholz Defendants Jeffrey Tillinghast Defendant Appellees Arguments not to exceed 15 minutes per side Mr Roach for the appellant Good morning your honors may it please the court my name is Christopher Roach and I represent Mitchell Albin who is the plaintiff and appellant in this case I respectfully request three minutes for rebuttal Mr Albin brought claims against the the Kenton County Detention Center defendants as well as some medical staff defendants for failure to provide any medical care for a certain period of time while he was at the Kenton County Detention Center the court below when deciding to grant summary judgment based on qualified immunity for the Kenton County Detention Center defendants found that the case law in as it relates to the facts in this case was not clearly established it also found that the individual defendants were not individually aware subjectively aware of Mr Albin's serious medical needs or on the other hand didn't do something to provide him with medical care that he he needed there was no dispute below that the that Mr Albin's medical needs were objectively serious he was experiencing diabetic ketoacidosis for a period of close to 16 hours before he was first evaluated for those symptoms throughout the time period when he was first brought into the detention center he had just taken his insulin he pretty much felt fine slowly over the course of a couple hours the symptoms progressed and he went into what he believed to be diabetic ketoacidosis because he had experienced it before did he ever tell anyone that he was going into kidia i'm sorry i'm kitty katie acidosis yeah so the i don't believe that his testimony specifically said that he was going into diabetic ketoacidosis his statements were that he was diabetic that he was vomiting that wasn't able to hold down water that he needed iv fluids which is something he was aware of from previous hospitalizations as well as that piece off get help or he might die what do you um so the biggest problem i see with your case or the biggest potential is what the district court said which is maybe quite understandably his testimony given kind of the sickness he was under his i've repeatedly warned folks but he can't identify who he warned and then he also says that he has no idea about the timing so he's like it could have been five minutes or it could have been 15 hours so if you add those two together combined with 1983 requirement that you have to create a genuine issue of material fact for each particular defendant how how can we say that just kind of to create a genuine issue of material fact for any particular defendant who was at the jail at various times the the other part of the under the analysis would also be basically under blackmore if there are conditions that are so serious that it's obvious even to a lay person that can help supply the subjective component of deliberate indifference in fact defendant the last go at 12 p.m roughly an hour maybe hour and 15 minutes after these symptoms started noticed himself that mr alvin was torn up i believe is what he said that he was vomiting and there was blood in his vomit these conditions continued through the night he was waking up inmates the the type of vomiting that he was experiencing described it as being so powerful and painful that it's just different it's louder he's waking inmates up inmates are actually coming to provide him help so it's not only the fact that he he was asking for help and it's based on the you know there are a lot of different deputies at the jail you know they don't the they don't necessarily know everybody by name the deputies themselves don't besides velasco can't don't have any independent recollection of seeing mr alvin during the time period that's relevant to their claims or to his claim and what was the time period once velasco noticed the vomiting until when mr alvin received the medical attention so i'm bad at math but it was a roughly 12 15 a.m when velasco would have noticed it was 3 17 p.m that same day where mr alvin was first actually seen or evaluated that there was um i mean even even your client admits that somebody came and saw him before 3 17 um it was he said he had a vivid recollection um of somebody coming into the place where he was located to treat him which was well before 3 17 3 17 so the the way that he stated in his in his deposition testimony is that he wasn't sure when it could have happened it could have been an hour after it could have been 12 hours because i mean it's a detention center you're relying on unnatural light there's no way to really tell what time it is lights go out for for night time but somebody walks in the lights turn on um and the the one thing that we have from the southern health partners defendants uh who were we settled out with they actually provide the the necessary information for that there was no evaluation nobody came to the to the dorm to see mr alvin until 3 17 p.m but didn't didn't he even say that um that those records were actually mistaken i thought he said that uh in his deposition again that um uh that they were simply wrong and that he was seen before and i think that the the context of the question of that part of that uh deposition was it feels like he was seen earlier but he doesn't have anything that can say definitively that he was or was not but what we do have the actual factual evidence that we do have that points to that are the deposition by medical for diabetic ketoacidosis till 3 17 p.m that day um well was he seen um i thought there was like a 5 a.m check on his insulin or his blood levels or that is correct so why um how is it a reasonable inference to think that the officers why wouldn't he have just told the person who did the blood check i'm really sick and i need help and his deposition testimony mr alvin did make that statement that he told them but then when did that suggest who was the person who did that was that a nurse a health care practitioner who did that it was it was defendant nurse banner so why why wouldn't that be enough to to i know you settled with them so why wouldn't that be enough to shift the liability to them since they're the ones responsible for his health because there was still a 10 hour period roughly 10 hour period after that checked the point where he actually got seen for the dead of diabetic ketoacidosis he's continuing to exhibit extreme physical reactions to the condition that he has at least based on his testimony he's he's trying to get help as much as he can in the condition that he's in he's crawling on his hands and knees to go puke sorry vomit the uh the diabetic the to the defendants that are the kenton county detention center defendants there's no evidence in the record showing that they had any idea that you know he was seen that morning or that he was uh that there was any sort of care plan for what he was going undergoing the based on the the nurses and the alvin's mr alvin's testimony uh even filing a sick call is a process where he'd have to walk across he'd have to get there at the time the nurse came he'd have to get the sick call slip fill it out turn the sick call slip in before uh the the nurse would leave um at what time do you think he first denied his constitutional rights to have whether it is medical attention or something else i think that it would be the the first point that he would have asked for medical attention which i i think he believes at least the first time would have been when he first started experiencing the symptoms so sometime around 10 or 7 10 or 11 p.m that are you saying that they denied him constitutional rights but somebody not seeing him for two hours or three hours or one hour 10 minutes i think at the point that he was he was for medical attention and then there was no attempt to get or at least the evidence that there are factual disputes here but when the inference was drawn in his favor there's evidence that there was no attempt to obtain medical help at that time and so the the ignoring a serious medical condition and just letting it go that by itself would be do you think we have to do this so defendant specific so all you're right that all the other defendants just don't remember but for velasco he clearly testified uh that um he got a nurse uh to come see your client um so you is it is the response that there's a genuine issue of material effect on that point yes because based on the the nurse's testimony as well as on the medical records there there was no nurse that the interesting thing is that velasco was only there for basically applying or providing coverage for a break and in that amount of time he noticed and was got the attention basically found out about this these issues that he was having um would you say it would have been enough um if if he had say say it was undisputed and he had just notified um the health i think that it would have it would have helped to a certain point i think that there would be a point later down later on down the road well specifically for velasco i do think that that probably would have covered his duty based on his 15-minute break um i think that if it was somebody who was there longer and hours had passed two or three hours would have passed and nobody's shown up i think that they might be in another duty to try to contact again um pretty much the entire case is just there's you have the everybody's pointing at each other like i don't know what's happening or uh the or you know you have hoppel saying that he never came in you have alaska saying that he did come in and saw him you have uh the other defendants who don't remember seeing uh mr alvin at all but instead went and uh said what they would normally do under those that's correct he he says he saw the vomiting and then he told hop he velasco says he told hopper correct hop was denying that um did hop will continue on did his shift in at that point as well or did he continue on hopper was a uh a night shift so he would have been on from 11 p.m on friday night until 7 a.m on uh saturday morning so hopper would have continued on over that prisoner but velasco was was gone at that point can i make one distinction on that sure the the sergeants and the officers in charge aren't necessarily staying in the dorms at all times they perform rounds uh they go and visit and check and see everything that's happening and then leave so they do rounds to the jail he's not staying in that cell the entire time okay well you good morning may it please the court chris norlow on behalf of the kenton county corrections officers each of whom was sued in their individual capacity can you speak up just a little bit sir yes uh there's two scenarios that could explain why there was no medical charting on friday night or saturday morning after the blood sugar draw was checked and before mr albin was seen by nurse razor saturday afternoon the first is medical responded to mr albin's complaints and failed to chart it indeed mr albin testified that he recalls being seen by medical more times than was charted the other scenario is that medical did not treat mr albin despite being summoned to the dorm leaving him on a diabetic schedule per their protocol under either scenario or a combination of both it is unrefuted that he was not deprived of insulin during his stay he received it during each of the three shifts once self-administered before he self-surrendered at 6 p.m and then he received it again early saturday morning after going to the medical unit but don't you think um that they would have had a duty to notify the nurses if the evidence was undisputed that they knew of his debilitating condition he was vomiting every 14 15 minutes with 12 hours without question uh there is a duty to report that to the medical staff if it's observed that an inmate is sick and and so this case really comes down to it seems to me whether there's enough circumstantial evidence that a jury could believe that um each of these defendants had knowledge um and so why why wouldn't like um the thing that comes to my mind is recipes at the thing speaks for itself why isn't just the mere fact that he's in this incredibly poor condition vomiting every 15 minutes allowed the sufficient to kind of create the notion that they should have known or they they did know well i think generally the the testimony supports the fact that the debt there is no evidence according to mr alvin himself that each deputy did not report to medical staff what they knew he testified to that unequivocally and there is no record of deputies calling the medical unit um to report a sick inmate there's there's no separate record maintained by either the medical staff or the jail about that fact however velasco testified that he did call the medical staff and had a direct conversation with diabetic ketoacidosis um there was no mention of anything beyond an inmate reports feeling ill and he and vomiting and velasco reported that to hoppel hoppel said contact medical velasco said he contacted medical there's a note uh nurse vandegraaff testified that he went to see um uh mr albin in the dorm at some point and mr albin refused treatment which would also be consistent with the rounds done by nurse razor at 9 a.m saturday morning she would have breached the the door literally feet away from where uh mr albin's uh area was his sleeping area and mr albin testified that i did not ask for help i did not complete a sick slip i don't feel like i should have to complete a sick slip for what he perceived to be an acute condition so there's there's these issues of what exactly did mr albin tell the dep each deputy and when he first thought he was he had food poisoning from the chicken sandwich there was an issue of maybe he was dope sick because one of his charges was possession of heroin and mr albin himself testified that sometimes he gets confused between what his diabetic symptoms may be and uh withdrawal so the corrections deputies once medical staff was notified were under winkler were entitled to reasonably rely on their medical judgment who treated him so whether that happened in the dorm before he went to get blood sugar very early saturday morning i think the record said it was like between 3 and 330 or if it happened for the first time at 330 on saturday morning mr albin was seen he was seen by medical staff who then the deputies were entitled to rely on their medical judgment on how best to treat him for his reported symptoms any dispute over medical standards of care that that have since been resolved is immaterial to the corrections officers qualified immunity how quickly do you think um how long how long of a time between when he notified them and when staff came to see or between when he notified the staff and when the staff notified the nurses would create an eighth amendment claim so we just the timing is just totally unclear on the record so we do know that um a nurse came and saw him and his bunk at some point but he started he started complaining he says at 11 p.m at night um if that um happened at 5 a.m that that six hours do you think that would be enough to create a eighth amendment violation do you think they have a duty to notify medical staff sooner on you see what i'm saying it's just unclear so i don't i don't know what to make of the fact that it is unclear number one but number two it would seem like if you're kind of on the ground vomiting every 15 minutes that maybe it's somewhat urgent and you shouldn't wait until into your shift to notify staff or medical well what we know from the testimony from velasco was that he he apparently was the first one that mr albin was able to identify i i told that deputy there that was covering that break and velasco said yes i do recall mr albin i do recall him telling me he was ill i recall contacting the officer in charge uh chuck hopple and i recall following chuck hopple's directive to call the nursing staff and report it that's about all he was supposed to do i guess i i would agree with that but you would say sure i would agree he's not he's not a medic or anything like that he's not a mr albin said anything beyond i feel ill you think there's a genuine issue i would agree with that too um i guess the key question is whether there's a genuine issue of material fact on whether he actually notified medical because i know he's quite states it quite clearly that he did but um i would say no uh given mr albin's testimony that he believed he believed that that deputy contacted medical yeah but do you think it's um it was hours later it could have been another deputy maybe um because the nurse was unclear of like if you would think that if he contacted medical it would have happened around midnight or the nurse would have come and seen him around midnight but it seems like the nurse came like maybe way later than that um well i can speculate much like mr albin is doing uh to to accomplish uh what he urges on appeal but i i would say that the the call to the nurse by velasco happened within minutes of mr albin reporting it to velasco because if you recall velasco was only in dorm 102 for 15 minutes and then he went to dorm to to a different dorm so the call that he testified he made would have been made during during that period of time he was covering that break on that shift i believe is what the record supports so with with respect to each uh individual deputy during those interim periods which i know the court is is asking well how long does it have to be while someone complains about uh needing medical care when does when does the deliberate indifference uh discussion start well for let's start with tillinghast deputy tillinghast there's no evidence or circumstances to infer that he whose shift ended at 11 p.m friday night when mr albin first came into custody knew about his medical condition he never spoke to albin did he correct um so at least with tillinghast appellant is urging the court to supplant the requirement for probative evidence to overcome summary judgment with mere conjecture sergeant russell was the oic of the officer in charge friday night and therefore there must be some affirmative showing that russell either authorized approved or knowingly acquiesced in the alleged unconstitutional conduct if tillinghast didn't engage in unconstitutional conduct which is what the district court found i'd like to correct my friend on the other side he said the court found that it wasn't clearly established actually the court found there was no constitutional violation at all do you think um so getting but this is the key point right so he testifies that um he starts getting sick near the end of tillinghast shift um but he doesn't um tillinghast doesn't has no recollection so it's not like tillinghast affirmatively says no i never talked to him he never mentioned that to me which clearly would probably be enough um i i think would have would have been enough to grant summary judgment to him but he he just says i don't remember and then albin just says i notified somebody around this time um is that do you think that he doesn't say who it was um why shouldn't that be enough to create a genuine issue of material fact for the whatever the 15 or 20 minutes that tillinghast was based on this record the only fair inference is that it was velasco it was later at midnight and back to deputy velasco he of course he covered the dorm in one two for only 15 minutes he informed medical staff that he was feeling ill and vomiting which mr alvin conceded in his deposition he also testified although not with great uh clarity in his recollection that someone did come to see him after he started feeling ill although his recollection of that encounter is faint but it does dovetail with uh what lpn van de graaff's testimony was that mr alvin refused medical attention sometime during a shift um so moving on to sergeant hoppel who was another officer in charge on the late shift into saturday he visited dorm 2 at 12 50 am and he did not see any inmate frequenting the restroom or needing medical attention at that time if you recall velasco had reported to him within the preceding hour that alvin was vomiting blood and hoppel directed him to call the medical staff which velasco said he did and alvin does not refute however hopper was unaware that alvin was diabetic ketoacidosis there was no way for him to that point in time so there's no reasonable inference that happened hopper knew more than velasco on these facts so there's no genuine issue of material fact how do you how do you deal with hoppels testimony that he didn't believe velasco told him anything i don't think he disputed i think he doesn't recall it is what his testimony was just he doesn't recall doesn't recall which when you have a corrections facility with upwards of 700 inmates on a given night where you're going to recall every encounter especially especially where you're not being asked to write an incident report you might recall an incident report more so than you would just a general call of someone reporting someone feeling ill so i think it's definitely understandable incredible that they're not going to recall every single conversation with with deputy staff um deputy rider was on shift in the dorm where mr alvin was located on saturday between 7 and 11 a.m again mr alvin speculates that rider knew about his condition but there's insufficient evidence that would allow a reasonable jury to find in his favor that rider did know about a serious medical condition alvin declined to see uh the lpn nurse razor when she was whether with respect to rider he was there for um kind of the longest period of the time overnight i believe um what would you say that or that i guess the argument on the other side would be just the mere fact that he was crawling on his hands and knees to the bathroom to puke every 15 minutes to vomit every 15 minutes um would be enough to at least give him knowledge that something was wrong and so why wouldn't that create a genuine issue material effect uh the actual time rider was in the dorm was not was not as your honor recalls okay he was in the dorm only from 7a to 11a okay on saturday morning but do you think that um and then that if the testimony is he's crawling on his hands and knees to the bathroom quite frequently that he would have at least been on notice if that was true i believe the testimony about the crawling on the hands and knees was during the the night shift on friday not going into saturday morning um and with with him starting at 7 a.m rider um mr alvin would have would have been seen for his uh finger stick blood sugar test and insulin just within hours of that and um he left at 11 so any anything that happened in an interim time between 11 a.m and when nurse razor saw him at at 3 30 in the dorm he he would not know he was not on shift um sergeant smith was on duty from 3 a.m to 3 p.m on saturday he was in dorm 2 at 8 28 a.m and again at a little bit afternoon about 12 30 council yes sir your time is up if you could just wrap it up yes i will um and sergeant smith would have been the last individual sued and much like the other defendants especially those in supervisory capacity he just he just did not have sufficient information to subjectively uh violate mr alvin's constitutional rights and i would ask the district court decision thank you just want to make a few points as quick as i can um so uh defendants had made basically the argument that the the two options out of the the facts that we have is that uh medical responded and uh failed to to treat uh or that medical didn't provide any uh i'm sorry medical failed to actually document what they actually did when they came in there uh they over he's overlooking though or the defense overlooking the fact that the there's also the possibility that they never contacted the medical department um based on alvin's testimony he never refused any treatment in vandergraaf's deposition there's an issue about the time frame where he supposedly this this refusal happened uh earlier in the deposition he thought it happened in the dorm after going through the deposition talking about the process it would have happened in the booking area which would have been at the time period that mr alvin was still feeling fine if it happened at all which defendant do you think you have the strongest case against or do you well to speculate um i think against the the the three deputies that were in the dorm on post so velasco tillinghast and writer i think that those are you hold velasco because he was on what was it 30 minutes or 15 minutes that came through and reported him and he should have done more than that yes your honor i think that it's even even along the line with uh garrison and napier the in the your case the the intake booking officer was only with them for for two minutes and so the and put this you know this booking information this diabetic information into a medical stack where the inmate may not get seen for hours in this case if you believe the if you resolve actual inferences in favor of the plaintiff appellant then there's evidence that in this medical at all and that's that's where his even that 15 minute time period is can can give rise to the actual claim for subjective uh sorry the subjective component of the deliberate indifference claim tillinghast also had a a very specific way that he testified that he did his head counts at the end of the shift which would have been at a few minutes before 11 which is he goes to each bunk he checks on each person and he checks on their health so there's there's an actual individualized way that he would do this that would put him in direct contact with mitchell at the time that he's starting to experience these alarming symptoms and then for writer he was still he was he was at the he was in he was in the dorm the longest with mitchell alvin he had the most opportunity to see the things that were happening to him and that's my time is up thank you mr rugge and thank you mr nordlo we'll take the case under submission clerk may call the next case